**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

WILLIAM RICHARD NIELSEN,
       *Defendant-Appellant.*

No. 11-30189

DC No.
CR 11-008 DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
April 10, 2012—Seattle, Washington

Filed September 12, 2012

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Callahan

11121

## COUNSEL

Cyndee L. Peterson, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

Michael Donahoe, Senior Litigator, Federal Defenders of Montana, Helena, Montana, for the defendant-appellant.

## OPINION

TASHIMA, Circuit Judge:

William Nielsen appeals the sentence imposed following his guilty plea to coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). Nielsen contends that the district court erred when it calculated the Sentencing Guidelines range for his offense. Specifically, Nielsen contends that the district court erred in imposing a two-level upward adjustment pursuant to the "vulnerable victim" provision of U.S.S.G. § 3A1.1. He also contends that the district court should not have applied a "repeat and dangerous sex offender" enhancement pursuant to U.S.S.G. § 4B1.5(a), on the basis of his adjudication as a delinquent youth. We have jurisdiction pursuant to 28 U.S.C. § 1291. We vacate Nielsen's sentence and remand for resentencing.

# I.  BACKGROUND

## A.  *Factual Background*

In December 2010, Nielsen began communicating with A.J., a 12-year-old girl,[1] on an adults-only sex chat line. The two exchanged phone numbers and engaged in phone sex and "sexting." Nielsen told A.J. that he could provide her with drugs and invited her to visit him in Montana. A.J. purchased a Greyhound bus ticket to visit Nielsen, using money she took from her parents. Before she left Wyoming, she informed Nielsen of her age. He told her that he was already a registered sex offender.

When A.J. arrived by bus in Montana, Nielsen met her at the station and brought her back to his apartment, where he gave her marijuana. Over the next four days, he had sex with A.J. numerous times, engaging her in bondage and sadomasochistic activity. While she was at Nielsen's apartment, A.J. had full use of her phone, which she used to send text messages to her friends and to Nielsen while he was out of the apartment. After four days, A.J.'s parents, who were divorced, tracked her to Nielsen's apartment and retrieved her.

Before meeting Nielsen, A.J. had used drugs and engaged in sexual conduct with older men. She described herself to police as mature for her age. In order to access the adults-only chat line where she met Nielsen, A.J. misrepresented her age.

## B.  *Procedural Background*

In January 2011, Nielsen pled guilty to coercion and enticement of a minor, a violation of 18 U.S.C. § 2422(b). The district court applied a two-level upward adjustment to Nielsen's offense level pursuant to U.S.S.G. § 3A1.1, based on its conclusion that Nielsen knew or should have known that A.J. was

---

[1]We use the initials "A.J." to protect the identity of the minor victim.

unusually vulnerable as compared to other minors. The court also applied a "repeat and dangerous sex offender" enhancement, based on its conclusion that Nielsen's juvenile adjudication for sexual assault qualified as a prior "sex offense conviction" within the meaning of U.S.S.G. § 4B1.5(a).

Nielsen objected to the applications of § 3A1.1 and § 4B1.5(a); the district court overruled both objections. Based on the district court's calculations, the Guidelines range for Nielsen's offense was 235 to 293 months in prison. The court sentenced Nielsen to an above-Guidelines sentence of 480 months, as requested by the government. Nielsen contends that the length of his sentence is substantively unreasonable.

## II.  STANDARD OF REVIEW

We review the district court's construction and interpretation of the Sentencing Guidelines de novo. *United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007); *United States v. Allen*, 153 F.3d 1037, 1040 (9th Cir. 1998). We review the court's factual findings for clear error. *Holt*, 510 F.3d at 1010.

## III.  DISCUSSION

### A.  *Vulnerable Victim Adjustment*

**[1]** The Sentencing Guidelines provide for a two-level upward adjustment to a defendant's offense level "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim . . . ." U.S.S.G. § 3A1.1(b). A "vulnerable victim" is a person who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2.

**[2]** A victim is "unusually vulnerable" when she is "less able to resist than the typical victim of the offense of conviction." *United States v. Wetchie,* 207 F.3d 632, 634 (9th Cir.

2000); *see also United States v. Luca*, 183 F.3d 1018, 1027 (9th Cir. 1999) (stating that the district court must point to facts that made the victim "less able to defend [herself] than a typical victim").[2] "[I]t is not enough to support a finding of particular susceptibility under § 3A1.1 that the victim[ ] [is] more likely than other members of the general population to become a victim to the particular crime at issue." *United States v. Castellanos,* 81 F.3d 108, 110 (9th Cir. 1996). As we explained in *Castellanos*:

> The reason for this is that criminals will always tend to target their victims with an eye toward success in the criminal endeavor. Thus, the chosen victims are usually more susceptible than the general population to the criminal conduct . . . . But all defendants targeting such victims do not necessarily merit a sentence enhancement under § 3A1.1. Otherwise, all but the most unthinking of criminal defendants would be candidates for upward adjustments under § 3A1.1.

*Id.* at 110-11.

[3] Therefore, "[i]f the factor that makes the victim vulnerable is not 'unusual' for victims of the offense, the § 3A1.1(b) enhancement is not permitted." *United States v. Castaneda,* 239 F.3d 978, 981 (9th Cir. 2001); *see also United States v.*

---

[2]The dissent argues that the adjustment should apply because A.J. was not in a position of sufficient strength to resist the 6′4″, 370-pound Nielsen. But it points to nothing in the record indicating that A.J.'s size made her more vulnerable than the typical minor victim of the offense of conviction, or even other minors in general. It is more reasonable to assume that the typical victim of the crime at issue would be equally vulnerable when faced with Nielsen's larger size. *Cf. United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) ("A district court can apply the vulnerable victim enhancement where a child is so young and small that he or she is less able to resist *than other child victims of pornography*.") (emphasis added); *United States v. Scott*, 529 F.3d 1290, 1303 (10th Cir. 2008) (victim was "unusually vulnerable even among Mann Act victims" because she was "particularly small and frail . . . for her age").

*Williams,* 291 F.3d 1180, 1195-96 (9th Cir. 2002), *overruled on other grounds by United States v. Gonzales,* 506 F.3d 940 (9th Cir. 2007) (en banc). Similarly, application of the "vulnerable victim" adjustment is not appropriate "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." U.S.S.G. § 3A1.1 cmt. n.2. Here, it would have been inappropriate for the district court to apply § 3A1.1 on the basis of A.J.'s minority alone; "although any victim of abusive sexual contact with a minor might be described as vulnerable on account of her minority, her age does not make her any more vulnerable than other victims of this offense." *Wetchie*, 207 F.3d at 634 n.4. The district court clearly stated, however, that it was not A.J.'s age, but other factors taken in the context of her age, that made her a vulnerable victim.

At Nielsen's sentencing, the district court stated that it was a "very difficult question" whether § 3A1.1 applied. Comparing A.J. to other minors, the district court noted that there was a reasonable argument that A.J. was "unusually precocious" rather than unusually vulnerable. Nonetheless, the court concluded that § 3A1.1 applied because A.J. came from "a broken home" (her parents were divorced); she was active on a sex chat line; she was "destitute or bored"; she was sexually active; and she was interested in marijuana.

**[4]** Nielsen argues that the district court's findings are not supported by the evidence in the record. We need not decide whether the court's factual findings are clearly erroneous because the court's application of § 3A1.1 was improper even assuming the accuracy of its findings. *Cf. Williams,* 291 F.3d at 1196 ("The factual findings related to vulnerability here were not clearly erroneous. However, we still must decide whether the application of the enhancement was permissible . . . or inapplicable because the victims were 'typical' Mann Act victims . . . .") (internal citation omitted). Although the district court concluded that A.J. was an unusually vulnerable minor, it did not distinguish A.J. from the typical victim of

the offense of conviction. Rather, it compared her to minors in the general population, which is not the correct inquiry.[3] *Castellanos*, 81 F.3d at 110.

[5] The factors the court relied on to justify its application of § 3A1.1 — A.J.'s pre-existing interest in sex and drug use, her boredom, and her inclination to get away from her divorced parents — at most support the court's conclusion that A.J. was "more likely than other members of the general population to become a victim to the particular crime at issue," which we have held is insufficient to support the application of the upward adjustment. *Id.* Our precedents indicate that the district court's findings are insufficient to support a § 3A1.1 adjustment when comparing A.J. to the typical victim of the offense of conviction.

In *Williams*, we considered the application of § 3A1.1 in a case in which the defendant was convicted of enticing or coercing two minors to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(a).[4] We reversed the district court's application of § 3A1.1 with regard to one minor, because the court "made no findings of unusual vulnerability beyond [the victim's] status as a drug-addicted teenage runaway." *Williams,* 291 F.3d at 1196. We noted that an unstable personal life and chemical dependency are "characteristics . . . typical among Mann Act victims and, without more, cannot support the application of § 3A1.1." *Id.*; *see also Castaneda,*

---

[3]The dissent asserts that we should defer to the district court's decision to apply the adjustment, but no deference is warranted where the district court applies an incorrect legal standard. *See United States v. Petersen*, 98 F.3d 502, 505-06 (9th Cir. 1996).

[4]Although *Williams* addressed a violation of 18 U.S.C. § 2422(a), while Nielsen was convicted of violating § 2422(b), the holding of that case is still relevant here. The two subsections of § 2422 share a common lineage in the Mann Act of 1910, and they are nearly identical in wording, except that § 2422(b) specifically addresses minors. *See United States v. Laureys,* 653 F.3d 27, 41-42 (D.C. Cir. 2011) (Henderson, J., dissenting) (tracing origin of § 2422(b) to the Mann Act of 1910).

239 F.3d at 981 (adopting the First Circuit's reasoning in *United States v. Sabatino,* 943 F.2d 94, 102-103 (1st Cir. 1991)); *United States v. Scott,* 529 F.3d 1290, 1302 (10th Cir. 2008) ("The Ninth Circuit has reasoned that an unstable living environment alone cannot support the vulnerability enhancement . . . . We agree that an unstable personal life is sufficiently common among Mann Act victims that [the 13 year old victim's] runaway status cannot support the enhancement.") (citing *Williams*, 291 F.3d at 1195-96); *United States v. Beith*, 407 F.3d 881, 892 (7th Cir. 2005) ("Unfortunately, family discord is common among victims [of the Mann Act] . . . . A finding of family problems, therefore, is not sufficient to support this enhancement."). While the dissent argues that the typical victims of the offense of conviction "almost certainly do not share most or all" of the characteristics that made A.J. particularly susceptible to the criminal conduct, it does not identify any factors that meaningfully distinguish A.J. from R.K., the minor victim in *Williams. See Williams*, 291 F.3d at 1185 (describing unstable home life, drug use, and sexual activity).

**[6]** The dissent argues that the fact that A.J. could be enticed to have sex with Nielsen itself demonstrates that she was unusually vulnerable. While this openness to enticement may distinguish A.J. from other minors, it does not provide a basis for determining that she was more susceptible than the typical victims of 18 U.S.C. § 2422, who by definition have been enticed to engage in sexual activity. *Cf. Luca*, 183 F.3d at 1028 ("We recognized that criminals typically direct their activities toward those who are more likely to succumb to the scheme and indicated that the district court must consider more than the fact that a defendant would likely succeed in defrauding his or her targeted victim.") (citing *Castellanos*, 81 F.3d at 111).

**[7]** Our decision today does not preclude the application of the vulnerable victim adjustment in other cases involving violations of 18 U.S.C. § 2422(b). The adjustment remains avail-

able in such cases so long as the district court identifies a specific factor (or factors) that made the victim uniquely vulnerable as compared to the typical victim of the offense. *See Williams*, 291 F.3d at 1196 (affirming adjustment where district court found that victim had a "mental condition" resulting from being raped when she was seven); *see also United States v. Archdale*, 229 F.3d 861, 869 (9th Cir. 2000) (affirming adjustment in case involving sexual abuse of a minor, where victim had a cognitive disability and "borderline intelligence"). Here, however, the district court failed to determine that A.J. was less able to defend herself and more deserving of societal protection than the typical minor enticed to participate in unlawful sexual activity in violation of § 2422. *See Luca*, 183 F.3d at 1027. Nor did the court base its application of the adjustment on a finding that, by choosing A.J. as his victim, Nielsen "reached a new level of depravity" as compared to other perpetrators of his crime.[5] *Id.*; *see also Castellanos*, 81 F.3d at 112. It was error for the district court to apply § 3A1.1 in this context.

## B. *Repeat and Dangerous Sex Offender Enhancement*

[8] The "Repeat and Dangerous Sex Offender Against Minors" enhancement applies if a defendant "committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction[.]" U.S.S.G. § 4B1.5(a). Presenting a question of first impression in this circuit, Nielsen argues that the district court should not have applied

---

[5]The dissent mistakenly argues that the adjustment applies because Nielsen's conduct demonstrated a "new level of depravity" as compared to other offenders. But it is the "defendant's choice of victim[ ]" that must show an "extra measure of criminal depravity" for the adjustment to apply; the depravity of the offender's conduct in matters other than his choice of victim is legally irrelevant to the applicability of § 3A1.1. *See Castellanos*, 81 F.3d at 111. The fact that Nielsen's conduct involved sex, drugs, and other indications of moral depravity was properly accounted for under other sentencing enhancements and the court's consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

§ 4B1.5(a) to enhance his sentence because his juvenile adjudication for sexual assault does not count as a "conviction" within the meaning of the Guidelines. We agree.

[9] The application notes to § 4B1.5(a) define "sex offense conviction" as "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor . . . ." U.S.S.G. § 4B1.5 cmt. n.3(A)(ii). The government argues that the inclusion of the phrase "any offense" in this definition demonstrates the Sentencing Commission's intent to count "any" prior sexual offense against a minor as a conviction, including juvenile adjudications. A plain reading of the note indicates, however, that it is meant to address which substantive offenses count as a "sex offense," rather than define what constitutes a "conviction."

[10] When the Guidelines apply to juvenile adjudications, they say so expressly. Thus, § 4A1.2(d) specifically addresses "juvenile sentences," and the application notes to § 4A1.2 describe in detail how juvenile adjudications are to be treated with regard to the term "prior sentence." *See United States v. Williams,* 891 F.2d 212, 215 (9th Cir. 1989) ("The sentencing guidelines include a section specifically addressing the use of prior juvenile sentences in determining the criminal history level of a defendant."); U.S.S.G. § 4A1.2 cmt. n.7 ("[F]or offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted."). In contrast, § 4B1.5(a) and its application notes include no reference to juvenile adjudications at all.

Further, the Guidelines do not use the word "conviction" to refer to juvenile adjudications. Certain juvenile adjudications count as "prior sentences" or offenses, *see, e.g.,* U.S.S.G. § 4A1.2(d), but the word "conviction" is used only to refer to

adult convictions. *See* U.S.S.G. § 4B1.2 cmt. n.1 (defining a "prior felony conviction" as "a prior adult federal or state conviction"). This is consistent with our general understanding that juvenile adjudications do not result in "convictions." *See United States v. Doe*, 53 F.3d 1081, 1083 (9th Cir. 1995) ("[A] successful prosecution under the [Federal Juvenile Delinquency] Act results in a civil adjudication of status, not a criminal conviction."); Mont. Code Ann. § 41-5-106 ("No adjudication upon the status of any youth in the jurisdiction of the court . . . shall . . . be deemed a criminal conviction . . . ."); *State v. Hastings*, 171 P.3d 726, 728 (Mont. 2007) ("Hastings' youth court adjudication did not constitute a 'conviction' . . . .").

The government notes that juvenile adjudications qualify as predicate convictions under particular federal statutes. But Congress also specifically indicates when it intends for juvenile adjudications to be considered convictions, while imposing age and severity limitations on what sorts of adjudications may be considered. *See, e.g.,* Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16911(8) ("The term 'convicted' or a variant thereof, used with respect to a sex offense, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse . . . ."). The Guidelines do not specify which subset of juvenile adjudications may be considered "sex offense convictions" under § 4B1.5; they do not specify that juvenile adjudications may be considered at all.

**[11]** We therefore hold that the district court erred in applying § 4B1.5(a), because Nielsen's juvenile adjudication does not constitute a "sex offense conviction." Our interpretation of § 4B1.5(a) comports with the rule of lenity, which "applies to Sentencing Guidelines as well as to penal statutes." *United States v. Fuentes-Barahona,* 111 F.3d 651, 653 (9th Cir. 1997) (per curiam).

The government argues that any error in applying § 4B1.5(a) was harmless, because Nielsen could be considered a "repeat and dangerous sex offender" under § 4B1.5(b), if not subsection (a). *See* U.S.S.G. § 4B1.5(b) (providing for an enhancement "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct"). However, if the district court had not imposed the "vulnerable victim" adjustment, Nielsen's Guidelines range would have been lower if the court had applied subsection (b) instead of subsection (a), so the error in treating Nielsen's prior adjudication as a conviction under § 4B1.5(a) was not harmless. *See United States v. Munoz-Camarena,* 631 F.3d 1028, 1031 (9th Cir. 2011) (per curiam).

## C. *Substantive Reasonableness*

Because we conclude that the district court erred in calculating the Guidelines range for Nielsen's sentence, we do not reach the question of whether his sentence was substantively reasonable. *See id.* (citing *United States v. Carty,* 520 F.3d 984, 991-92 (9th Cir. 2008) (en banc)).

## IV. CONCLUSION

**[12]** For the foregoing reasons, we **VACATE** Nielsen's sentence **and REMAND** for resentencing in conformity with this opinion.

---

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent. William Nielsen coerced a seventh-grade girl to abscond from her home, take an overnight bus from Wyoming to Montana, do illegal drugs, and engage in four days of sadomasochistic sex with a man she knew was a registered sex offender. It strains credulity to say, as the

majority does, that a child who can be coerced into doing those things is not unusually vulnerable. What is worse, by holding that a vulnerable victim adjustment under Sentencing Guidelines § 3A1.1 was unavailable in this case, the majority makes the adjustment unavailable for all but the most defenseless victims of sexual coercion. There is no indication the Sentencing Commission intended § 3A1.1 to be such a toothless watchdog.

The district court did not err in enhancing Nielsen's sentence under Sentencing Guidelines § 4B1.5(a). Nothing in that Guideline excludes juvenile adjudications from the definition of "sex offense conviction." We must rely on the Guidelines' plain language, rather than insert words it does not contain or look to irrelevant state law. Even if the district court erred in applying § 4B1.5(a), that error was harmless because Nielsen qualified for a "pattern of activity" enhancement under § 4B1.5(b). Finally, Nielsen's sentence is substantively reasonable.

## I.   Vulnerable victim adjustment

Section 3A1.1 of the Sentencing Guidelines provides for a two-level enhancement of a defendant's offense level "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1. A "vulnerable victim" is a person who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.* § 3A1.1 cmt. n.2. To be an "unusually vulnerable" victim, a person must be less able to resist than the typical victim of the offense of conviction. *United States v. Castaneda*, 239 F.3d 978, 981 (9th Cir. 2001); *United States v. Wetchie*, 207 F.3d 632, 634 (9th Cir. 2000). Because Nielsen was convicted of violating 18 U.S.C. § 2422(b), which criminalizes coercion and enticement of minors, there must be something more than A.J.'s age to justify applying the vulnerable victim enhancement in this case. *Wetchie*, 207 F.3d at 634.

There is. The district court found that A.J. was from a broken home, she was bored, she wanted to use illegal drugs, she had accessed an adult online sex site, and, despite being just twelve years old and in the seventh grade, she had been sexually active in the past. As if to underscore these vulnerabilities, A.J. stole money from her parents to purchase an interstate bus ticket and then traveled, alone, from Wyoming to Montana to meet a man who was twice her age and whom she knew was a registered sex offender. *See United States v. Weischedel*, 201 F.3d 1250, 1254 (9th Cir. 2000) (explaining that the court must consider not only "the characteristics of the defendant's chosen victim," but also "the victim's reaction to the criminal conduct[ ] and the circumstances surrounding the criminal act") (quotation marks and citation omitted).

While the district court called A.J.'s unusual vulnerability a "very difficult question," it concluded that, "in weighing all of the proof I think it is more likely that she is an unusually vulnerable person or victim," especially considering "the social aspect of this young person." This conclusion is consistent with our case law. *See United States v. Johnson*, 132 F.3d 1279, 1285-86 (9th Cir. 1997) (holding that a seventeen-year-old foreign student who had only been with his host parent for a few weeks before being sexually assaulted was a vulnerable victim, even though he was sexually experienced, called home several times, and knew people in the United States); *United States v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002) (per curiam) ("[T]he enhancement for victim vulnerability still is appropriate if the district court makes a finding of unique vulnerability in the circumstances."), *overruled on other grounds, United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007) (en banc)*; United States v. Mendoza*, 262 F.3d 957, 960-61 (9th Cir. 2001) (holding that fraud victims were unusually vulnerable based not on their identity as aliens, but on their specific needs and background); *United States v. Matsumaru*, 244 F.3d 1092, 1107-08 (9th Cir. 2001) (same).

Indeed, that A.J. was willing to steal money from her parents and travel to another state to meet an adult man she knew

was a registered sex offender shows she did not appreciate the danger she was in. *See United States v. Miguel*, 368 F.3d 1150, 1157 (9th Cir. 2004) (explaining that young children who willingly climbed into the back of a hot car trunk and did not ask for water did not "fully appreciate the danger" of the defendants' smuggling operation, and therefore were "vulnerable victims" under § 3A1.1). The vulnerability A.J. demonstrated in these dangerous circumstances was particularly acute given that A.J., though not an infant or a toddler, "was not in a position of sufficient strength to resist," *United States v. Holt*, 510 F.3d 1007, 1012 (9th Cir. 2007), whatever the 6′4″, 370-pound Nielsen may have demanded of her. Furthermore, once A.J. met Nielsen in his apartment, she became dependent on him for food, lodging, and possibly even money to return home. *See United States v. O'Brien*, 50 F.3d 751, 756-57 (9th Cir. 1995) (holding that the vulnerable victim adjustment was proper where insurance fraud victims were reliant on health insurance provided by the defendants). Together these cases easily support the district court's finding that A.J. was a vulnerable victim.

In reversing the district court, the majority cites cases holding that an unstable personal life and chemical dependency are not by themselves enough to find unusual vulnerability. Maj. Op. at 11129-30. But A.J. didn't just come from a troubled home and want to smoke pot; she also was, in the district court's words, "unusually precocious." The district court initially cited A.J.'s headstrong nature as a reason she might not be unusually vulnerable, but it became clear during the sentencing hearing that the opposite was true. As the government argues, A.J. was unusually willing to engage in sex with Nielsen, whom she knew was a registered sex offender. The majority responds that while A.J.'s "openness to enticement may distinguish A.J. from other minors, it does not provide a basis for determining that she was more susceptible than the typical victims of 18 U.S.C. § 2422, who by definition have been enticed to engage in sexual activity." Maj. Op. at 11130. In erroneously equating will with susceptibility, the majority

overlooks that a headstrong minor may actually be *more* susceptible to sexual coercion than her meeker peers.

That was plainly the case here. The district court's characterization of A.J. as "unusually precocious" reflected the fact that she was unusually troubled, something Nielsen knew and took advantage of. *See United States v. James*, 139 F.3d 709, 714 (9th Cir. 1998) (affirming a vulnerable victim adjustment where the victim's pregnancy "created a potential vulnerability which [the defendant] acknowledged and exploited"). In other words, precociousness in a 12-year-old girl with A.J.'s background can be, and in this case was, a sign of unusual vulnerability, not maturity, responsibility, or intelligence. And even though minors who are enticed into sexual acts—that is, the group against whom A.J. must be compared—may be likely to share some of the characteristics that made A.J. "particularly susceptible to the criminal conduct," U.S.S.G. § 3A1.1(b)(1), cmt. n.2, they almost certainly do not share most or all of them.[1]

Of course, we need not constrain our review to A.J.'s characteristics in determining whether the § 3A1.1 adjustment applied. Contrary to the majority's conclusion, Maj. Op. at

---

[1]The majority incorrectly asserts that I "do[ ] not identify any factors that meaningfully distinguish A.J. from R.K., the minor victim in *Williams*." Maj. Op. at 11130. In *Williams*, the district court concluded that R.K. came from an unstable home and used drugs. We held that these characteristics were not enough to distinguish R.K. from other victims of the Mann Act, to which the statute of conviction in *Williams* (as here) traced its origins. *Williams*, 291 F.3d at 1196.

Here, however, A.J. was not a sex worker who was used and abused by her pimp; she was a 12-year-old girl who, given her extraordinary past, habits, and personality, was capable of being (and was) coerced into extraordinary exploitation. In addition, whereas in *Williams* the district court did not make any findings regarding the defendant's "potential exploitation of that vulnerability," *id.*, here the district court expressly found that Nielsen knew of A.J.'s vulnerabilities and took advantage of them.

11131, Nielsen's conduct demonstrated a "new level of depravity" as compared to other offenders. *United States v. Castellanos*, 81 F.3d 102, 112 (9th Cir. 1996); *see also United States v. Nichols*, 464 F.3d 1117, 1122 (9th Cir. 2006) (holding that we may affirm an enhancement on any ground supported by the record). The district court specifically found that "Mr. Nielsen has taken [adult males' lascivious attraction to children] to a completely different level. Not only did he . . . entice this young woman to come to Montana to engage in sex and drugs, he did so when she got here, having sexual intercourse with her five and six times daily for the period that she was in his apartment." Nielsen's moral depravity, combined with A.J.'s unique traits (of which Nielsen was aware and which no doubt informed Nielsen's choice of victim), "create the extra need for societal protection which § 3A1.1 is designed to address." *United States v. Stover*, 93 F.3d 1379, 1387 (8th Cir. 1996).

Finally, even if this were a close case (it is not), we should defer to the district court. The majority does not disturb any of the district court's factual findings, and accordingly we must respect them. *United States v. Salcido*, 506 F.3d 729, 732 (9th Cir. 2007). I recognize that we have not resolved whether we review a district court's application of the Guidelines to the facts *de novo* or for abuse of discretion. *See United States v. Swank*, 676 F.3d 919, 921-22 (9th Cir. 2012). Nonetheless, in a case like this one, the district judge's personal observations of the victim and the perpetrator are far more insightful than our review of a cold record, and we should resolve any doubts in the district court's favor. *Cf. Gall v. United States*, 552 U.S. 38, 51 (2007) ("The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.") (quotation marks and citations omitted).[2]

---

[2]In *Koon v. United States*, 518 U.S. 81, 98 (1996), the Supreme Court explained:

The effect of the majority's opinion is to make the § 3A1.1 "vulnerable victim" adjustment much more difficult to apply. As the majority correctly observes, our past cases hold or suggest that a minor's age, drug addiction, or unstable personal life are not by themselves enough to apply the adjustment for offenses committed under 18 U.S.C. § 2422. Maj. Op. at 11129-30 & n.4. But now we hold that much greater evidence of vulnerability is not enough, either. If a twelve-year-old girl from a troubled home who lies about her age, logs on to a sex chat line, and is enticed by a self-confessed sex offender more than twice her age to steal money from her parents, cross state lines, do illegal drugs, and engage in repeated sadomasochistic sex for four days isn't unusually vulnerable, I don't know who is.[3]

## II.   Repeat and dangerous sex offender enhancement

Nielsen previously was adjudicated a juvenile delinquent in state court after he pleaded guilty to sexually assaulting his

> Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do.

The same considerations apply when applying sentencing enhancements, including the vulnerable victim adjustment.

[3]The majority responds that the vulnerable victim adjustment remains available for 18 U.S.C. § 2422(b) violations "so long as the district court identifies a specific factor (or factors) that made the victim uniquely vulnerable as compared to the typical victim of the offense." Maj. Op. at 11130-31. The point is that the district court did that here. The majority's contrary conclusion serves to winnow the factors upon which a district court may base the adjustment, even though no authority compels that result and good reason counsels against it.

half sister. The district court relied on this adjudication to enhance Nielsen's sentence under Sentencing Guideline § 4B1.5(a), which applies where "the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction."

We know that Nielsen's juvenile adjudication is a "sex offense conviction" under § 4B1.5(a) for a simple reason: § 4B1.5(a) "and its Application Notes contain no juvenile-conduct or conviction-limiting language, in contrast to other Guidelines within Chapter 4." *United States v. Phillips*, 431 F.3d 86, 92 (2d Cir. 2005).[4] Such limiting language is present in U.S.S.G. § 4A1.1, which applies an enhancement for "each prior sentence of imprisonment exceeding one year and one month," except that "[a] sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this subsection only if it resulted from an adult conviction." U.S.S.G. § 4A1.1(a) & cmt. n.1. Similarly, an enhancement applies for "each prior sentence of imprison-ment of at least sixty days not counted in (a)," *id.* § 4A1.1(b), but "[a]n adult or juvenile sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted only if confinement resulting from such sentence extended into the five-year period preceding the defendant's commencement of the instant offense," *id.* § 4A1.1 cmt. n.2 (citing *id.* § 4A1.2(d)); *see also id.* § 4A1.1(c). Section 4B1.5(a) includes no such distinctions between juvenile and adult adjudications. *See Phillips*, 431 F.3d at 92-93.

Our cardinal canons of construction require that we give the Guidelines their plain meaning, *United States v. Calderon Espinosa*, 569 F.3d 1005, 1007 (9th Cir. 2009), and avoid inserting words they do not contain, *see Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 168 n.16 (1993)*; see also Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[A]bsent

---

[4]*Phillips* actually addressed § 4B1.5(b), but this observation is equally true of § 4B1.5(a).

a clearly expressed legislative intention to the contrary, [the plain language of a statute] must ordinarily be regarded as conclusive." (quotation marks and citation omitted)).

The majority chooses to ignore the plain language of § 4B1.5(a) and our canons for reading it, arguing instead that "[w]hen the Guidelines apply to juvenile adjudications, they say so expressly." Maj. Op. at 11132 (citing U.S.S.G. § 4A1.2(d)); *see also* Maj. Op. at 11133 (making the same assertion with respect to statutes enacted by Congress). To win the stalemate, the majority cites the rule of lenity, but that rule applies "only where 'after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute.' " *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (quoting *Smith v. United States*, 508 U.S. 223, 239 (1993)). Here, there is no ambiguity, as neither § 4B1.5(a) nor its application notes state or imply that a juvenile adjudication does not qualify as "sex offense conviction." We should not canvass the Sentencing Guidelines to support negative implications because the Guideline before us is plain on its own terms.

The majority's remaining arguments hold little water. The majority relies on *United States v. Doe*, 53 F.3d 1081 (9th Cir. 1995), for the general proposition that "juvenile adjudications do not result in 'convictions.' " Maj. Op. at 11133. However, *Doe* dealt generally with the rehabilitative purposes of the Federal Juvenile Delinquency Act, not with whether a juvenile adjudication is a "conviction" for purposes of sentencing a defendant for a crime he committed as an adult. *See Doe*, 53 F.3d at 1083-84; *see also Jonah R. v. Carmona*, 446 F.3d 1000, 1007 (9th Cir. 2006) (cautioning against a "too-literal reading of Title 18 as applied to juveniles" based on *Doe*).

The majority also cites the fact that, under Montana law, "criminal conviction[s]" do not include juvenile adjudications. Maj. Op. at 11133 (citing Mont. Code Ann. § 41-5-106). But whether state law defines a juvenile adjudication as

a "conviction" is irrelevant to whether the federal Sentencing Guidelines do so. *See United States v. Leal-Felix*, 665 F.3d 1037, 1040 (9th Cir. 2011) ("[W]e do not look to state law to determine the meaning of the Sentencing Guidelines. A federal sentencing enhancement provision . . . is interpreted according to a uniform, national definition, not dependent upon the vagaries of state law." (citation, internal quotation marks, and alterations omitted)); *see also United States v. Mendoza-Morales*, 347 F.3d 772, 776 (9th Cir. 2003) (explaining that, "in deciding whether a prior state conviction should be counted for purposes of a federal criminal history calculation, a district court must examine federal law," not state law).

At the end of the day, it does not matter whether the district court erred in enhancing Nielsen's sentence under § 4B1.5(a) because any error was harmless. The parties agree, and the majority does not dispute, that Nielsen "engaged in a pattern of activity involving prohibited sexual conduct" under § 4B1.5(b). Because the district court properly applied the vulnerable victim adjustment, the § 4B1.5(b) enhancement places Nielsen in the same sentencing range (235-293 months) as if § 4B1.5(a) applied.

## III.   Substantive reasonableness

Because the majority vacates Nielsen's sentence under U.S.S.G. §§ 3A1.1 and 4B1.5(a), it does not address Nielsen's argument that his sentence is substantively unreasonable. Because I would find no error in the district court's application of §§ 3A1.1 and 4B1.5(a), I address Nielsen's argument.

We review the substantive reasonableness of a criminal sentence for abuse of discretion. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc). A district court abuses its discretion " 'when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the

district court committed a clear error of judgment.' " *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc), *cert. denied*, 131 S. Ct. 2096 (2011)). "We may not reverse just because we think a different sentence is appropriate." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir.) (en banc), *cert. denied sub nom.*, 553 U.S. 1061 (2008).

While 480 months is a long sentence, the district court appropriately explained why that sentence was reasonable based on the factors laid out in 18 U.S.C. § 3553(a). The court discussed Nielsen's "history and characteristics," 18 U.S.C. § 3553(a)(1), including Nielsen's prior sex offenses, flat affect during the sentencing hearing, psychopathic traits, high risk of recidivism, and four-time failure to complete sex offender treatment. The court discussed the need for Nielsen's sentence to promote respect for the law, referencing Nielsen's failure to register as a sex offender and his difficulties with supervision. Finally, the court discussed the need to protect the public, referencing Nielsen's young age, lack of honest remorse, and demonstrated poor potential for rehabilitation.

The district court, having decided that an above-Guidelines sentence was warranted, " 'consider[ed] the extent of the deviation and ensure[d] that the justification [was] sufficiently compelling to support the degree of the variance.' " *Carty*, 520 F.3d at 991 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). Specifically, the court concluded that, given the facts of the crime and all of Nielsen's characteristics, "a very, very significant upward variation from the Guidelines is appropriate and reasonable." The court explained that it was "unconvinced that 20 years is sufficient" and that "children need to be protected from him. And the most significant way to deal with . . . a person who is not likely to be subject to rehabilitation or treatment, is to incarcerate him for a long period of time." In short, the district court's explanation of its sentencing decision is sufficient to "permit meaningful appellate review," *Carty*, 520 F.3d at 992, and betrays no "clear

error of judgment," *Ressam*, 679 F.3d at 1086 (quotation marks and citation omitted).

Nielsen nonetheless argues that his sentence is substantively unreasonable for three reasons. First, Nielsen contends that the factors the district court relied on to fashion his sentence were "repetitious"; that is, they already were accounted for in the Sentencing Guidelines provisions the district court used to calculate his sentencing range. But while there is some overlap, the Guidelines provisions do not account for factors that were critical to the district court's decision, such as Nielsen's use of drugs to entice A.J., the sadomasochistic aspects of Nielsen's conduct, or the physical repercussions for A.J., all of which bear on the "nature and circumstances of the crime," 18 U.S.C. § 3553(a)(1), and which meant, in the district court's estimation, that "a much higher sentence is appropriate." Nielsen also argues that the district court drew "exaggerated" or "factually flawed" inferences from a psychological report, including the inference that Nielsen was not likely to learn from his experience. However, the report explicitly arrived at that conclusion based on Nielsen's lack of self-control, impulsivity, callousness, and lack of guilt or remorse. Finally, Nielsen asserts that his sentence is unfair because the district court made no reference to A.J.'s conduct. That assertion is incorrect; the court considered A.J.'s behavior, including that she actively pursued drugs and was willing to engage in sexual conduct. The district court did not abuse its discretion by concluding that Nielsen's encouragement of these behaviors weighed for, rather than against, a lengthy sentence.

## IV. Conclusion

The record and the case law support the district court's finding that A.J. was an unusually vulnerable victim warranting an adjustment to Nielsen's sentence under Sentencing Guidelines § 3A1.1. In holding otherwise, the majority puts that adjustment out of reach in all but the rarest of cases. In

addition, the district court did not err in enhancing Nielsen's sentence under Sentencing Guidelines § 4B1.5(a) based on a prior juvenile sexual assault adjudication. Nothing in that section limits "sex offense conviction[s]" to adult, rather than juvenile, adjudications. In any event, any error in applying this enhancement was harmless, since Nielsen was eligible for an enhancement under § 4B1.5(b). Finally, Nielsen's sentence is substantively reasonable. For these reasons, I would affirm the district court.